TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN







NO. 03-00-00668-CR







Martin Gonzalez a/k/a Martin Gonzalez Escamilla, Appellant



v.



The State of Texas, Appellee







FROM THE DISTRICT COURT OF TRAVIS COUNTY, 147TH JUDICIAL DISTRICT


NO. 0996134, HONORABLE WILFORD FLOWERS, JUDGE PRESIDING







Appellant Martin Gonzalez was indicted for the murders of Sylvia Garcia, Maria
Flores, and Olivia Estrada pursuant to the same scheme or course of conduct. See Tex. Pen. Code
Ann. § 19.03(a)(7)(B) (West 1994). At trial, the district court authorized appellant's conviction for
capital murder if the jury found that he murdered all three women, or any two of them, under the
requisite circumstances. The jury returned a general verdict of guilty. Because the jury later
answered the mitigation issue affirmatively, the district court assessed punishment at imprisonment
for life. See Tex. Code Crim. Proc. Ann. art. 37.071, §§ 2(e)(1), (g) (West Supp. 2001).

Appellant does not challenge the sufficiency of the evidence showing that he
murdered the three women. He contends, however, that the evidence is legally and factually
insufficient to sustain the finding that the murders were committed pursuant to the same scheme or
course of conduct, and that section 19.03(a)(7)(B) is unconstitutionally vague as applied to him. He
also urges that the court should have granted a mistrial when the State elicited hearsay testimony
from a witness. We overrule these contentions and affirm the judgment.


BACKGROUND


Sylvia Garcia

Appellant married Sylvia Garcia in Monclova, Mexico, in May 1994. She was forty-four and divorced from her first husband. Appellant moved to Austin late that year, and Garcia
followed in March 1995. Garcia telephoned her daughter in Monclova almost daily, and seemed
nervous and unhappy. The last call to her daughter came on June 8, which also was when Garcia's
last letter was received. Garcia was last seen at the Austin residence she shared with appellant on
June 24, 1995. Appellant moved from this residence the following day, taking all the furnishings
he and Garcia had brought to it.

Human skeletal remains were found in a nearby vacant lot in late September 1995,
but the body was not positively identified until 2000, when DNA tests confirmed that the remains
were those of Sylvia Garcia. The cause of death was determined to be blunt force trauma to the
skull, which had multiple fractures.


Maria Flores

Maria Flores, a native of Panama, moved to Austin in 1994 with two of her children. 
She met appellant in 1998 when she was fifty-three, and soon began living with him. Flores's
daughter testified that appellant was a jealous man and was physically abusive to her mother. Flores
worked at two jobs and was forced to give all her money to appellant. Flores, accompanied by
appellant, left for work on May 20, 1998, and never returned. Flores's daughter said that appellant
appeared nervous when she asked him if he knew the whereabouts of her mother. Appellant reported
Flores's disappearance to the police, but the case was closed in June 1998.

Maria Flores's skeletal remains were found in a field in southeast Austin on
November 22, 1999. The medical examiner found evidence of at least fifteen blunt force injuries
to the head and face caused by an object such as a hammer.


Olivia Estrada

Olivia Estrada, who was fifty-four years old, met appellant at a dance hall in 1998 and
formed a relationship with him. Appellant proved to have a violent temper, and Estrada told her
doctor that appellant threatened to choke her if she tried to leave him. Estrada was afraid to call the
police, fearing it would provoke appellant to greater violence. Estrada's family grew increasingly
concerned for her safety, and in October 1998 urged her to obtain a restraining order against
appellant. They also devised a plan by which members of the family would be with Estrada when
she broke up with appellant.

Estrada's daughter called the police on October 29, 1998, after Estrada did not answer
her telephone for two days and family members found her house unoccupied. Estrada's hall carpet
was soaked with water, and blood spatters were found on a bedroom doorframe, in the hallway, and
on the kitchen door. Blood and a ring belonging to Estrada were found in the carport, next to her
car.

Olivia Estrada's skeletal remains were found in a field in Bastrop County on October
18, 1999. The skull showed evidence of blunt force trauma to the forehead and just above the right
eye. Estrada had also been shot in the back of the head.

Appellant was arrested for the kidnapping of Olivia Estrada in November 1998. 
Further police investigation connected him to Sylvia Garcia and Maria Flores. Appellant was
indicted for capital murder after the bodies of the three women were found and identified.


DISCUSSION


A person commits capital murder if he murders more than one person "during
different criminal transactions but the murders are committed pursuant to the same scheme or course
of conduct." Tex. Pen. Code Ann. § 19.03(a)(7)(B). Appellant contends the evidence is legally and
factually insufficient to support the finding that he murdered the three victims pursuant to the same
scheme or course of conduct. He further argues that section 19.03(a)(7)(B) fails to provide sufficient
notice as to when two or more murders constitute "the same scheme or course of conduct," and for
that reason is unconstitutionally vague. To prevail on the latter claim, appellant must demonstrate
that the statute is vague as it applies to his conduct. Corwin v. State, 870 S.W.2d 23, 27 (Tex. Crim.
App. 1993); Bynum v. State, 767 S.W.2d 769, 774 (Tex. Crim. App. 1989).

The defendant in Corwin, over a period of nine months, abducted, sexually assaulted,
and fatally stabbed two women, and fatally stabbed a third woman when his attempt to abduct her
failed. Corwin, 870 S.W.2d at 27. There was also evidence that the defendant had engaged in
similar conduct twelve years before and one year after the alleged offenses, but in each of those
instances the victim had lived. Id. The court wrote:

In abducting, raping, and killing or attempting to kill five women in more or
less the same way over the course of some thirteen years, . . . [Corwin] can
reasonably be said to have engaged in "a regular mode or pattern of . . . behavior." 
The evidence shows that [the three victims] were each murdered pursuant to this
same "regular mode or pattern of behavior." Perhaps in hypothetical cases, as the
time and distance between murders committed during different transactions
increases, and as the actor's motive or modus operandi vary, it will become more
difficult for putative defendants and law enforcement agencies to say with certainty
that the murders occurred "pursuant to the same . . . course of conduct." But
[Corwin] demonstrates no such uncertainty on the present facts, and the evidence was
sufficient for a rational jury to find it was in fact "pursuant to the same . . . course of
conduct that" [Corwin] committed these murders. . . . Whatever doubt may exist at
the periphery, we think that the "core" conduct proscribed by [the statute] is clear
enough, and that [Corwin's] conduct fell within it.



Id. at 28-29 (footnote omitted). 

Appellant argues that to uphold a conviction under section 19.03(a)(7)(B) there must
be evidence that each murder was committed with a similar motive and in a similar way. While
Corwin does indicate that similarity of motive and method are relevant considerations, the opinion
also cautions that the statute does not necessarily require a showing that the accused acted according
to some "over-arching objective or motive." Id. at 28. We believe that it is appropriate to examine
all the circumstances surrounding the alleged murders, rather than to focus on only the two factors
emphasized by appellant.

We believe that in forming intimate relationships with three middle-aged women and
then killing them and disposing of their bodies in more or less the same way over the course of five
years, appellant can reasonably be said to have engaged in a similar course of conduct or regular
pattern of behavior. This is particularly true with regard to Maria Flores and Olivia Estrada: the two
women were approximately the same age; each met appellant in 1998 and formed substantially
identical relationships with him; appellant was threatening and abusive to each; and each was
murdered within a space of only five months. All three victims suffered multiple blows to the head
with a blunt object, and appellant left each victim's body in a vacant lot or field. We conclude that
appellant had sufficient notice that his conduct was proscribed as a capital offense because it was
committed pursuant to the same course of conduct, and that the jury could rationally find beyond a
reasonable doubt that appellant committed these murders pursuant to the same course of conduct. 
See Jackson v. Virginia, 443 U.S. 307, 324 (1979); Geesa v. State, 820 S.W.2d 154, 161 (Tex. Crim.
App. 1991); Griffin v. State, 614 S.W.2d 155, 158-59 (Tex. Crim. App. 1981). Points of error one
and two are overruled.

Appellant's argument in support of his factual insufficiency claim does not point out
any particular evidence supporting the conclusion that he did not murder Garcia, Flores, and Estrada
pursuant to the same course of conduct. Instead, appellant merely refers to his previous arguments
regarding the constitutionality of the statute and the legal sufficiency of the evidence. In effect,
appellant asks this Court to reweigh the evidence and substitute our verdict for that of the jury.

Appellate courts exercise their fact jurisdiction only to prevent a manifestly unjust
result. We are not free to reweigh the evidence and set aside a verdict merely because we feel that
a different result is more reasonable. Clewis v. State, 922 S.W.2d 126, 135 (Tex. Crim. App. 1996);
Reina v. State, 940 S.W.2d 770, 773 (Tex. App.--Austin 1997, pet. ref'd). We must maintain
appropriate deference to the jury's verdict by finding error only when the record clearly indicates that
the verdict is wrong and manifestly unjust. Johnson v. State, 23 S.W.3d 1, 9 (Tex. Crim. App.
2000); Reina, 940 S.W.2d at 773. A decision is not manifestly unjust simply because the fact-finder
resolved conflicting views of the evidence in the State's favor. Roise v. State, 7 S.W.3d 225, 233
(Tex. App.--Austin 1999, pet. ref'd). Point of error three is overruled.

In his last point of error, appellant contends the district court should have declared
a mistrial when hearsay testimony was elicited from a State witness. Detective Robert Merrill was
the lead investigator in this case. He was asked by the prosecutor to describe the "consistencies
among the disappearances and murders of these women." Merrill answered, "Well, he was
romantically involved with all three of them. He had lived with all three of them. We had
indications that he showed signs of jealousy if they talked with anyone." Appellant objected to the
latter statement as being based on hearsay. The objection was sustained and the jury was instructed
to disregard, but appellant's mistrial motion was overruled.

In the vast majority of cases in which improper testimony is elicited, an instruction
to disregard the testimony will be deemed to cure the error. Gardner v. State, 730 S.W.2d 675, 696
(Tex. Crim. App. 1987). An instruction to disregard will be inadequate only in extreme cases where
it appears that the evidence was clearly calculated to inflame the jurors and was of such a character
as to suggest the impossibility of withdrawing the harmful impression from their minds. Id. The
instant cause is not such an extreme case, and the district court did not abuse its discretion by
denying the mistrial after instructing the jury to disregard. In light of other testimony regarding
appellant's jealous behavior, any residual prejudice was clearly harmless. Tex. R. App. P. 44.2(b). 
Point of error four is overruled.

The judgment of conviction is affirmed.



 __________________________________________

 Jan P. Patterson, Justice

Before Chief Justice Aboussie, Justices Yeakel and Patterson

Affirmed

Filed: October 18, 2001

Do Not Publish